L. A. ANDREW, State Superintendent of Banking, Appellee, v. ALLEN MUNN, Treasurer of Polk County, Appellant.

MARCH 13, 1928.

*Carl S. Missildine*, County Attorney, *Alexander M. Miller*, Assistant County Attorney, for appellant.

*John Fletcher*, Attorney-general, *Maxwell O'Brien*, Assistant Attorney-general, and *Ben J. Gibson*, for appellee.

ALBERT, J.—The Iowa Loan & Trust Company was organized under the laws of the state of Iowa, with its principal place of business at Des Moines, Iowa. It had shares of capital stock outstanding in the total amount of $500,000. The tax levied upon these shares of stock for the years in question is as follows:

| | |
|---|---|
| 1919 | $34,165.35 |
| 1920 | 40,311.30 |
| 1921 | 43,000.20 |
| 1922 | 40,012.46 |
| 1926 | 7,101.50 |

The company passed into the hands of a receiver for liquidation on December 21, 1926. The plaintiff, as receiver, alleges that he is in possession of all of the property of the Iowa Loan & Trust Company; that the amount of just claims against said company exceeds its assets in the sum of about $7,000,000; that among the assets are numerous pieces of real estate that belonged to the Iowa Loan & Trust Company; and that the defendant, as treasurer of Polk County, has threatened to collect said taxes from the property in his hands as receiver, claiming that said taxes are a lien

upon said real property, and that their appearance on the tax books of Polk County creates a cloud on the receiver's title to the real estate in his possession as such receiver. He alleges that the same are not a lien upon any of the property in his hands, nor is any of the property in his possession as such receiver subject to be appropriated for the payment of said taxes; and he asks that the defendant be enjoined from undertaking the collection of the taxes above referred to from this receiver or his successor in office, and that such taxes be canceled, set aside, and held for naught, as against the receiver and the property in his hands; that the cloud on the title to the real estate be removed; and for such other and further relief as may be just and equitable in the premises.

These taxes were all levied against the respective holders of stock for the different years involved. No question is raised about the proceedings or regularity of the levies.

The evidence shows that the receiver will not have sufficient assets in his hands, together with any assessments made on the stock of this corporation, to pay the debts of the corporation. The question we have before us for consideration is whether or not the county treasurer is entitled to collect these various assessments from the receiver, or from the assets of the corporation in his hands, including the real estate that belonged to the Iowa Loan & Trust Company.

It is conceded in oral argument that such treasurer has no right to a payment of these taxes out of the proceeds of the personal property of the Iowa Loan & Trust Company that went into his hands as receiver, but it is insisted that such taxes are collectible from the real estate now in possession of the receiver, formerly belonging to the Iowa Loan & Trust Company, on the theory that the same is a lien upon such real estate.

It is apparent from the record that the receiver has no property in his hands which belonged to the individual shareholders. As he has not sufficient funds to pay the debts of the bank, he therefore possesses no property that would go to the shareholders in repayment of their investments in capital stock or dividends or in any other way.

Section 1322, Supplement to the Code, 1913, reads as follows:

"Shares of stock of national banks and state and savings

banks, and loan and trust companies, located in this state, shall be assessed to the individual stockholders at the place where the bank or loan and trust company is located.''

Section 1325, Code of 1897, reads as follows:

''The corporations described in the preceding sections shall be liable for the payment of the taxes assessed to the stockholders of such corporations, and such tax shall be payable by the corporation in the same manner and under the same penalties as in case of taxes due from an individual taxpayer, and may be collected in the same manner as other taxes, or by action in the name of the county. Such corporations may recover from each stockholder his proportion of the taxes so paid, and shall have a lien on his stock and unpaid dividends therefor. If the unpaid dividends are not sufficient to pay such tax, the corporation may enforce such lien on the stock by public sale,'' etc.

Section 7203, Code of 1924, which has been the law since the Code of 1873, reads as follows:

''Taxes due from any person upon personal property shall be a lien upon any and all real estate owned by such person or to which he may acquire title.''

The question, therefore, is an interpretation of these sections of the statute, to determine whether or not these assessments against the stockholders of this corporation were a lien upon its real estate in the hands of the receiver.

That a tax levied and assessed upon specified property is not a lien on that or any other property of the owner's unless expressly made so by statute is a rule too well settled to need citation of authority. See, however, *Jaffray & Co. v. Anderson,* 66 Iowa 718; 2 Desty on Taxation 732; 2 Dillon on Municipal Corporations (2d Ed.), Section 659; 3 Cooley on Taxation (4th Ed.) 2453.

That a legislative intent to this effect must be clearly manifest in the statute, because a lien will neither be created by implication nor enlarged by construction, is another rule well settled. 37 Cyc. 1138.

In *Head v. Board of Review,* 170 Iowa 300, at 306, we discussed this statute generally, and said: .

''This construction of the statute was distinctly recognized in the recent case of *Home Savings Bank v. Des Moines,* 205 U. S. 503, 516, the court saying: 'The right of such taxation rests

upon the theory that shares in corporations are property entirely distinct and independent from the property of the corporation. The tax on an individual in respect to his shares in a corporation is not regarded as a tax upon the corporation itself.' The tax may not be levied on the corporation's holdings of bonds or other property, but on the shareholder's stock, and this irrespective of whether the holdings of the corporation are exempt from taxation in the hands of individuals or not. From these considerations and the exaction of equality by the Federal statute, we conclude that: (1) shares of stock of national banks must be taxed to the individual owner; (2) shares of stock of state banks must be taxed to the individual owner; (3) the corporation or bank and the property which it owns are separate and distinct from the shares of the individual shareholder.''

This expression follows the usual distinction made in this case between the stock of a corporation and its property, treating them as separate and distinct entities. It is to be noted that the statute which provides for the payment of these taxes by the bank does not contain any provision whatever making the same a lien on its property, and under the first of the above rules, the statute not so providing, no such lien can be held to exist. It is insisted, however, that, by reason of the above quoted Section 7203, Code of 1924, these taxes were a lien upon the real estate of the bank; but we are satisfied from a careful analysis of the said section that it in no way avails the plaintiff.

The first requirement of the section is that there must be ''taxes due from any person upon personal property.'' Did the Iowa Loan & Trust Company have any ''taxes due'' upon personal property, within the meaning of this section? We think not. Section 1325, above quoted, creates a statutory liability, and nothing more. The instant taxes are not ''taxes due'' upon personal property of the bank, but primarily are taxes of individual stockholders. If the bank should pay the same, it would not be paying taxes on personal property owned by it, but would be simply fulfilling the liability marked out by statute.

A further provision of Section 7203 is that taxes due from any person upon personal property ''shall be a lien upon any and all real estate owned by such person or to which he may acquire title.'' As we view it, the sole purpose of this section of the statute is to make taxes against personal property of the

728

owner of real estate a lien upon the real estate or any real estate that he might subsequently acquire.

We pass the question of the legality of the statute which would make one person liable for the personal taxes of another, or make the same a lien upon the real estate of the first party, and conclude that this section of the statute has no application whatever to the situation we have under discussion in this case. We conclude, therefore, that, under this construction of the statute, no lien whatever exists for the taxes involved herein, as against the receiver's title and possession of the real estate referred to.

It is to be remembered that real estate belonging to banks is to be listed and assessed as marked out in Sections 6997 and 7002, Code of 1924, and the taxes we have under consideration here are personal taxes, arising from levies on shares of stock only.

Another reason for this conclusion is that, the corporation being a bank, and in the hands of a receiver, the assets thereof are first to be distributed among the depositors, who are given preference. The real force and effect of these statutes, as we view it, are simply to make the bank liable to the amount of the tax. It is not a tax against the bank or its property, but is a primary liability of the holder of the stock.

In Massachusetts, the legislature enacted a statute in substance identical with our statute on these matters, and in the case of *City of Boston v. Beal*, 51 Fed. 306, this statute was reviewed, under similar circumstances to those in the case at bar, and the court said:

"If the tax is paid by the bank, it can have no lien upon the shares of stock for repayment, as provided by Section 10 of the statute above cited, because the property representing such shares has ceased to exist. Under these circumstances, I do not think that the receiver can be held liable for this tax, or that it is a provable claim against the assets in his hands. * * * If the action against the bank under the statute makes the bank the agent of the state to collect the tax, or if the action is to be considered in effect a form of trustee process for attaching the funds of the shareholders in the hands of the bank, it is too late to bring suit after the funds are no longer in existence from which the bank can reimburse itself."

This case was affirmed by the circuit court of appeals, under the same title, in 55 Fed. 26. The same doctrine is reannounced, under a very similar statute in the state of Florida, in *Stapylton v. Thaggard*, 91 Fed. 93.

In *Knoxville Traction Co. v. McMillan*, 111 Tenn. 521 (77 S. W. 665, 65 L. R. A. 296), an attempt was made by the legislature to compel the traction company to pay certain taxes which had been assessed against their lessee for the use of advertising space in a car. It was held that the traction company had in its possession no funds or property whatever belonging to the lessee, from which it could recoup itself, and that the statute thus making the traction company liable was unconstitutional and void.

In *Walcott v. McCarroll*, 88 Okla. 279 (213 Pac. 296), the Oklahoma Supreme Court held, under statutory provisions similar to those of this state, that such tax against the shareholders was not a lien upon the assets of the bank in the hands of the bank commissioner, who had taken the bank over for liquidation. This identical holding was also made by the Supreme Court of the state of Washington, in *Hewitt v. Traders' Bank*, 18 Wash. 326 (51 Pac. 468).

But whatever the general rule may be, the legislature of this state has expressed clearly its intent in relation thereto. Prior to 1924, Section 3825-a, Code Supplement, 1913, provided:

"When the property of any person, partnership, company or corporation has been placed in the hands of a receiver for distribution, after the payment of all costs the following claims shall be entitled to priority of payment in the order named:

"First. Taxes or other debts entitled to preference under the laws of the United States.

"Second. Debts due or taxes assessed and levied for the benefit of the state, county or other municipal corporation in this state.

"Third. Debts owing to employees for labor performed as defined by Section 4019 of the Code."

By Section 1, Chapter 182, Acts of the Forty-first General Assembly, it is provided:

"The provisions of the preceding section shall not apply to the receivership of state banks, savings banks, loan and trust companies, or private banks, and in the receivership of state banks, savings banks, loan and trust companies, or private banks,

no such preference or priority shall be allowed as is provided in said preceding section, except for labor as provided by statute." Section 12719-a1, Code of 1927.

The second section of this chapter of the Acts of the Forty-first General Assembly provides:

"The provisions of the preceding section are declaratory of the intent of the legislature and of its interpretation of the provisions of Section 12719." Section 12719-a2, Code of 1927.

It is quite apparent, therefore, that the legislative intent was and is that the taxes due the state, county, or municipality are not to be treated as superior to the rights of the creditors of the bank.  This declaration by the general assembly is an open recognition of the fact that the state had no lien by reason of the levy and assessment of these taxes, or, if it is claimed that it did have such lien (which, of course, would make its rights superior to those of the creditors of the bank), it is a legislative declaration of the waiver thereof.

The case of *Bibbins v. Clark & Co.*, 90 Iowa 230, has no bearing whatever on this proposition, as the situation and facts in that case are wholly different.

We are satisfied, under this record, that plaintiff, as receiver, was entitled to the relief for which he prayed. This is the conclusion reached by the district court.—*Affirmed.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.